UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODEIJAH LEWIS,<br><br>                Plaintiff,<br><br>        v.<br><br>NEW YORK STATE OFFICE FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES, WILLOW BAER, SHERMARKE TANNIS, SHENA BABB, AIDAN COONEY, and ANDRISE D. MONGERARD,<br><br>                Defendants. | 25-CV-1136 (RA)<br><br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Odeijah Lewis brings this discrimination action against her former employer, the New York State Office for People with Developmental Disabilities ("OPWDD"), along with one individual Defendant in her official capacity, OPWDD's Acting Commissioner Willow Baer. Plaintiff also names four other state employee Defendants in their individual capacities: Shermarke Tannis, Shena Babb, Aidan Cooney, and Andrise D. Mongerard. Plaintiff, who suffers from Erb's palsy and lacks full use of one arm, alleges that she was discriminated against—and wrongfully terminated from employment—by OPWDD. Dkt. No. 17 ("Am. Compl.") ¶ 17. As a result of her physical disability, she could not complete the entirety of a required workplace safety course. After OPWDD denied her request for an accommodation, she was terminated. *Id.* ¶ 1.

In the Amended Complaint, Plaintiff argues that Defendants failed to provide her a reasonable accommodation, as required by law. Defendants respond that the safety course—and the self-defense skills taught in that course, deemed "secondary tools"—are an essential part of the job Plaintiff held, and thus cannot be subject to an accommodation. Plaintiff alleges that by failing to provide an accommodation and then terminating her, Defendants violated city, state, and federal anti-

discrimination law.  Before the Court is Defendants' motion to dismiss the Amended Complaint.  For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

The Court draws the following facts from the Amended Complaint and incorporated documents, accepting "well-pleaded factual allegations" as true for purposes of resolution of the pending motion to dismiss.  *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020).

For five years prior to beginning her employment at OPWDD, Plaintiff worked at other organizations providing services for individuals with developmental disabilities.  *Id.* ¶ 18.  As part of this previous work experience, Plaintiff went through self-defense training, which she successfully completed.  *Id.* ¶ 19.  That training, called Strategies for Crisis Intervention and Prevention-Revised ("SCIP-R"), was a requirement for OPWDD employees.  *Id.* ¶¶ 19–20.

Plaintiff applied for the position of Direct Support Assistant with OPWDD in December 2021.  *Id.* ¶ 22.  According to the job description, Direct Support Assistants "help people . . . with intellectual and/or developmental disabilities in residential and/or program settings" by "assisting them to learn and develop daily skills and habits."  *Id.* ¶¶ 23–24.  Among other responsibilities, Direct Support Assistants "take care of [disabled individuals'] personal needs;" "ensure community integration, health and safety, and a comfortable home environment for individuals;"  "[s]upport [disabled] individuals' health and wellness, and safety in everyday situations;" and "[m]aintain and ensure[] a safe, clean, and comfortable environment for [disabled] individuals."  *Id.* ¶¶ 24–25.  The job description listed a "high school or equivalent diploma" as the only certification prerequisite for the position—there was no explicit mention of self-defense training.  *Id.* ¶¶ 27–28.

Plaintiff alleges that she was hired by OPWDD as a Direct Support Assistant on April 7, 2022, although the hiring seems to have been contingent upon completion of a "physical exam."[1]  *Id.* ¶¶ 31–

---

[1] Plaintiff alleges that she was made to undergo the physical assessments required for a Direct Support Assistant Trainee *after* being hired by OPWDD.  Am. Compl. ¶ 32.  It is not clear on the face of the Amended Complaint whether

33.  As part of the physical exam process, OPWDD became aware that Plaintiff had a "musculoskeletal disorder" and required her to submit a letter from her health care provider "describing her . . . 'disorder' and clearing her for unrestricted physical activity."  *Id.* ¶ 34.  Plaintiff's doctor sent the New York Department of Civil Service ("DCS") a letter stating that Plaintiff "is fully capable of performing all duties required by her position . . . , including lifting patients . . . and restraining agitated patients. . . . [H]er diagnosis of Erb's palsy will [not] interfere with her duties in any way and . . . she can perform all routine work related [sic] activities without restriction."  *Id.* ¶ 35.

On August 10, 2022, DCS informed Plaintiff via letter that she "met the physical/medical qualifications" for the Direct Support Assistant role, and that she was "medically qualified for employment." *Id.* ¶ 37.  She began working at a group home, where she "assisted residents with daily activities and personal care, provided meals, administered medication, facilitated transportation, and accompanied residents to medical appointments."  *Id.*  Per her supervisor's reports, Plaintiff achieved satisfactory job performance reviews for her first year of employment.  She was told that her work was "immaculate," and she often worked with the most difficult, aggressive group home residents.  *Id.* ¶¶ 38, 41.

Plaintiff worked at two OPWDD group homes for just over a year, in which she "assisted residents with daily activities and personal care, provided meals, administered medication, facilitated transportation, and accompanied residents to medical appointments."  *Id.* ¶ 39.  She alleges that, throughout this period, she performed her duties at a high level, never had to use self-defense or similar techniques, and was not limited in any way by her Erb's palsy.  *Id.* ¶ 40.  Plaintiff "was regularly assigned to care for individuals . . . requiring one-on-one . . . or two-on-one supervision," including

---

completion of the physical exam was a prerequisite for the position.  Plaintiff later references a letter indicating she was only initially offered "conditional appointment" by OPWDD on April 7, 2022, *id.* ¶ 37, and that she began the position with a one-year "probationary period" which ran through July 31, 2023. *Id.* ¶ 80.

"residents who other [employees] did not want to support because they were, at times, aggressive." *Id*. ¶¶ 43–44.

"At some point"—it is not clear when, from the Amended Complaint—OPWDD replaced SCIP-R with a new training requirement, the Positive Relationships Offer More Opportunities To Everyone ("PROMOTE") training curriculum. *Id.* ¶ 21. As a result of this new requirement, Plaintiff was directed to attend the PROMOTE training in June 2023. *Id.* ¶ 46. The PROMOTE training, Plaintiff alleges, was not listed as a job requirement when she began working at OPWDD, yet she was nonetheless made to attend the course. A three-day course, the PROMOTE training instructs OPWDD employees on how to navigate care for residents with developmental disabilities. *Id.* ¶¶ 47, 87. As part of the curriculum, students undergo three total hours of instruction on "self-defense maneuvers." *Id.* ¶ 48.

When Plaintiff arrived at her first day of the PROMOTE training, she told the head trainer, Defendant Aidan Cooney, that she had a disability and could not perform certain self-defense techniques required as part of the course. *Id.* ¶ 50. Cooney informed Plaintiff that no accommodations were authorized as part of the course absent a note from "EHS."[2] *Id.* ¶ 51. This, Plaintiff now alleges, violated OPWDD's internal regulations, which required Cooney to refer Plaintiff to OPWDD's Designee for Reasonable Accommodation. *Id.* ¶ 52. Lewis proceeded to contact her supervisor and, eventually, OPWDD's associate director for human resources, Defendant Shena Babb. *Id.* ¶¶ 53–54. Neither approved any accommodation, and Plaintiff left the PROMOTE training without completing the course. *Id.* ¶¶ 54–58.

One month later, to the surprise of Plaintiff, Babb informed her that that OPWDD was terminating her for failing to complete the PROMOTE training by the end of a one-year probationary period. *Id.* ¶ 59. Lewis reported the entirety of the incident to OPWDD's regional director for human

---

[2] Plaintiff does not state what this acronym refers to.

resources, Defendant Shermarke Tannis, who took no action to stop the firing.  *Id.* ¶¶ 61–65.  After Plaintiff finally reached out to OPWDD's ADA coordinator to provide notice of her allegedly improper termination, Tannis allowed her to resume employment on a probationary basis.  *Id.* ¶¶ 67–71.  Her continued employment, however, still depended on her graduating from the PROMOTE training.  *Id.*

Plaintiff submitted an accommodation request with a letter from her healthcare provider to Defendant Andrise Mongerard, the OPWDD staffer and Designee for Reasonable Accommodation who was "authorized to make determinations" on reasonable accommodation requests.  *Id.* ¶¶ 69–76. Plaintiff's provider described the activities that Plaintiff could do, including "'continuously' lift[ing] and carry[ing] between '50-100 pounds,' squat[ing and] run[ning]."  *Id.* ¶¶ 74–75.  Plaintiff was capable of "simple . . . pushing and pulling" with her disabled right arm.  *Id.*  While the letter stated that Plaintiff was "able to achieve all physical tasks with self-modified technique," the provider wrote that Plaintiff is "unable to perform some physical maneuvers" and "must be allowed to use modified rather than standardized physical techniques for safety/self-defense."  *Id.* ¶¶ 75–76.  Plaintiff alleges that she did not seek a wholesale exemption from the PROMOTE training, just a modification that would allow her to graduate from the course while "modify[ing] certain protective techniques taught [and tested on] during the . . . class."  *Id.* ¶ 77.  Nearly a year passed, with Plaintiff having resumed work at OPWDD without incident.  On July 25, 2023, OPWDD extended Plaintiff's probationary period from July 31, 2023 to October 1, 2023 to "allow [her] to complete all probationary requirements," including the PROMOTE training.  *Id.* ¶ 80.  Then, without receiving approval of her accommodation request, she was rescheduled to attend the PROMOTE training on August 7, 2023.  *Id.* ¶¶ 79–82.  After being reassigned to training, Plaintiff followed up on her accommodation request with Mongerard, but did not receive an answer prior to beginning the PROMOTE training.  *Id.* ¶¶ 83–86.

When Plaintiff arrived at the PROMOTE training for a second time, Defendant Cooney called her to the front of the class to demonstrate a technique, called the "hair pull stabilization/release," which required her to hold both arms above her head.  As a result of her Erb's palsy, she was unable to

do so. *Id.* ¶ 92. Despite her inability to complete the move, Cooney called her to the front of the class to demonstrate it. *Id.* ¶¶ 95–99. In so doing, Plaintiff alleges that Cooney, who knew of her disability, intentionally humiliated her. *Id.* At the conclusion of the PROMOTE training, Plaintiff passed the course's written exams and required CPR test, but failed the physical components of the course. *Id.* ¶ 101. During a break in the training, Plaintiff asked Cooney "Why would you humiliate me in front of all those people just to fail me?" *Id.* Cooney responded by telling her that he was sorry she would lose her job. He also mentioned that he had only used the physical techniques taught in the PROMOTE training on two occasions during his career. *Id.* ¶ 102. Cooney allegedly encouraged Plaintiff to resign from OPWDD, rather than wait to be terminated, to preserve her eligibility for future state employment. *Id.* ¶ 103.

After Plaintiff failed the PROMOTE training, Mongerard denied Plaintiff's accommodation request. *Id.* ¶ 110. Mongerard informed Plaintiff that the "PROMOTE training cannot be modified and is an essential function of [Plaintiff's] job." *Id.*

In the days prior to her termination, Defendants informed her there was no other vacant job for which she was eligible without an accommodation. *Id.* ¶ 123. Specifically, she claims that Defendants failed to offer her another OPWDD role—Facilities Operation Assistant 1—which was posted at the time of her termination, and which does not require the PROMOTE training. *Id.* ¶¶ 122–25. Because Plaintiff did not complete the PROMOTE training, she was terminated for failing to complete her probation successfully. *Id.* ¶ 118.

Plaintiff filed this action against OPWDD on February 7, 2025, alleging disability discrimination under the Americans with Disabilities Act (ADA), the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL). On March 18, 2025, after OPWDD filed a motion to dismiss Plaintiff's initial Complaint, Plaintiff filed an Amended Complaint. Count I alleges that OPWDD violated Section 504 of the Rehabilitation Act of 1973 (the

6

"Rehabilitation Act"), 29 U.S.C. § 794, by subjecting Plaintiff to a hostile work environment, failing to engage with Plaintiff in an interactive process following her request for an accommodation, failing to provide her a reasonable accommodation, and terminating her because of her disability. Am. Compl. ¶¶ 128–37. Count II, brought against Commissioner Baer in her official capacity, raises similar allegations under the ADA, and also alleges that Baer's implementation of a "blanket ban" on modifications to the PROMOTE course requirements was unlawful. *Id.* ¶¶ 138–45. Counts III and IV, brought against all the employee Defendants (i.e., all Defendants other than OPWDD), state largely similar claims to Count II under state and city law. *Id.* ¶¶ 146–60. On April 29, 2025, Defendants filed the instant motion to dismiss. *See* Dkt. No. 24 (Defs.' Mot.); Dkt. No. 25. (Defs.' Br.). Plaintiff filed her opposition on May 20, 2025, and Defendants replied on May 27, 2025. *See* Dkt. No. 29 (Pl.'s Opp'n); Dkt. No. 30 (Defs.' Repl.).

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action," which are "supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court "constru[es] the complaint liberally, accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), although it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A court may, however, consider "documents attached to the complaint as an exhibit or incorporated in it by

---

[3] All quotations omit internal quotation marks, alterations, and citations unless otherwise noted.

7

reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs'

possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film*

*Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).[4]

## DISCUSSION

Defendants make three arguments as  to why the Amended Complaint should be dismissed for

failure to state a claim.   First, they argue that Plaintiff's requested accommodation—continuing

employment while not completing all of the physical requirements of the PROMOTE training without

modification—was not reasonable as it would have eliminated an essential function of the Direct

Support Assistant position and posed a direct threat to the safety of Plaintiff, her co-workers, and group

home residents.   Second, Defendants argue that to the extent they failed to engage in an interactive

process to accommodate Plaintiff's disabilities, that failure does not support a discrimination claim as

there was no reasonable accommodation available.   Third, Defendants argue that Plaintiff has not

plausibly pled the existence of a hostile work environment.   Defendants' motion is denied as to

Plaintiff's reasonable accommodation and interactive process claims.   Plaintiff's hostile work

environment claims are dismissed under federal law, but survive under the NYCHRL and NYSHRL.

---

[4] Defendants submitted five exhibits with their motion to dismiss, asking the Court to consider them as incorporated into the Amended Complaint for the purposes of resolving the motion, which Plaintiff opposes.  A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a document is not incorporated by reference, the Court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 152–53.

Exhibit 1 is a job description for the Direct Support Assistant Position.  Plaintiff quotes from this job description at length in the Amended Complaint, and relies upon it to argue that the secondary tools taught in the PROMOTE training were not a part of the job description. Am. Compl. ¶¶ 23–27.  The Court, therefore, will consider Exhibit 1 as part of its analysis.  The same is true for Exhibit 2, a website which Plaintiff quotes from to explain the PROMOTE training. *Id.* ¶ 47.   The Court will also take judicial notice of Exhibit 3, New York State's guidelines for reasonable accommodations, because it constitutes a "publicly available document[]." *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011).  Exhibits 4 (Plaintiff's employee history sheet) and 5 (a PROMOTE training manual), however, are not integral to the Amended Complaint, and the Court will not consider them at this point.

### I.       Plaintiff's Reasonable Accommodation and Interactive Process Claims

"To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019).[5]  The same standard applies under the NYSHRL and NYCHRL.  *Lawtone-Bowles v. City of New York*, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019).

For the purposes of the present motion, Defendants contest only the third prong of this test, arguing that an accommodation is unreasonable, and thus not legally required, if it "elimin[ate]s an essential function of a job."  Defs.' Br. at 7.  It is not possible, they suggest, to create a reasonable accommodation for Plaintiff's inability to complete all of the protective techniques involved in the PROMOTE training.  *Id.* at 7–14; Defs.' Repl. at 3.  The Court disagrees.  The question of whether a reasonable accommodation was available here—namely, one that did not eliminate an essential function of the job—cannot be resolved on this motion.

### A. Essential Functions of the Direct Support Assistant Position

To survive a motion to dismiss, "[a]ll that plaintiffs must do . . . is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Shaywitz v.*

---

[5] Citing *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010), Plaintiff argues that a complaint "need not establish a *prima facie* case to survive dismissal," and instead urges the Court to adopt a lower standard for evaluating Plaintiff's allegations.  Pl.'s Opp'n at 5.  But *Thai* noted the uncertainty of the employment discrimination pleading standard in the wake of the Supreme Court's landmark decisions in *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*.  Subsequent to *Thai*, courts in this Circuit typically apply the *prima facie* standard in reviewing 12(b)(6) motions.  *See, e.g.*, *Gahfi v. N.Y.C. Dep't of Educ.*, 2025 WL 675933, at *11 (E.D.N.Y. Feb. 28, 2025); *Stanley v. City Univ. of N.Y.*, 2023 WL 2714181, at *9 (S.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Stanley v. Phelon*, 2024 WL 1453872 (2d Cir. Apr. 4, 2024) (summary order).

*Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009).  A reasonable accommodation, however, "can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003).  The threshold question, therefore, is whether Plaintiff has made a facial showing that the specific secondary tools taught in the PROMOTE training could be substituted by a "reasonable accommodation," and therefore are not "essential" to the Direct Support Assistant position.  *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 481 (S.D.N.Y. 2013).

"Essential functions are fundamental duties to be performed in the position in question, as opposed to functions that are merely marginal." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 791 (S.D.N.Y. 2020).  "Although a court will give considerable deference to an employer's determination as to what functions are essential, there are a number of relevant factors that may influence a court's ultimate conclusion as to a position's essential functions."  *Id.*  A reasonable accommodation claim may thus survive a motion to dismiss even where (a) the employer viewed the function at issue as "essential" and (b) the job description referenced the function at issue.

The Second Circuit has instructed courts to look to the EEOC regulations for guidance interpreting the ADA.  *See, e.g.*, *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998).  The EEOC regulations provide a three-factor test on the essential function issue: courts consider whether (1) the function is at the core of the position, (2) there are a "limited number of employees available among whom the performance of that job function can be distributed," and (3) the function is "highly specialized."  29 C.F.R. § 1630.2(n); *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997).  The EEOC inquiry is "fact-intensive," *Stone*, 118 F.3d at 97, and evidence of whether a particular function is essential includes, but is not limited to the following factors:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective

bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs."

29 C.F.R. § 1630.2(n); *Stone*, 118 F.3d at 97.

The parties focus primarily on the first consideration—whether the specific techniques taught in the PROMOTE training are at the "core" of the position. Plaintiff argues that the techniques are not at the "core" of the Direct Support Assistant position, as "she successfully performed . . . her position for seventeen months" without needing to use them. Pl.'s Opp'n at 7. She alleges that she "merely requested permission to modify certain protective techniques that were taught during the PROMOTE class," and did not "request[] an exemption from [the] PROMOTE training, or the use of Secondary Tools." Am. Compl. ¶ 77. Defendants respond that the "specific techniques taught in the PROMOTE training" are essential and cannot be modified because to adopt Plaintiff's accommodation would have "eliminated" the duty, inherent to Plaintiff's position, to "support[] the safety of those under OPWDD's care and ensure[] an overall safe environment." Defs.' Br. at 7. Although "safety" is mentioned in the job description and may well be an essential function of the Direct Support Assistant position, the Court is not convinced that the specific secondary tools taught in the PROMOTE training are essential, at least on the face of the Amended Complaint. As Plaintiff's healthcare provider wrote, while Plaintiff "is unable to perform some specific physical maneuvers, . . . [she] is able to achieve all physical tasks with self-modified techniques." Am. Compl. ¶ 76.

Defendants lean heavily on the principle that employers are entitled to deference in determining the essential functions of a position, arguing that "the specific maneuvers taught in the PROMOTE training are crafted with safety concerns in mind, which is why this particular requirement cannot be modified without posing a direct threat to . . . safety." Defs.' Repl. at 6. In each particular case, however, deference "depends on the totality of the circumstances, and requires a fact intensive analysis." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 569 (S.D.N.Y. 2023) (quoting *Rodal v. Anesthesia Grp. of Onondaga,* 369 F.3d 113, 120 (2d Cir. 2004). For that reason, "the nature

11

of a job's essential functions is a fact-bound question ill-suited for resolution on a motion to dismiss." *Id.* at 570. Furthermore, the written job description here—which is part of the EEOC inquiry and evidence of the employer's view, in and of itself—does not make mention of the specific skills taught in the PROMOTE training, nor the PROMOTE training more generally.

Defendants make other assertions about the "dire" necessity of the "specific techniques" taught in the PROMOTE training. Any modification to these techniques, they say, would "eliminate" an essential function of the Direct Support Assistant position and pose a "threat to the lives and bodily safety to the vulnerable individuals under OPWDD's care, [employees], and the public." Defs.' Repl. at 3. Defendants urge that, as stated in *Garvin v. Potter*, "[a]n employer is not required to make an accommodation that would pose safety risks." 367 F. Supp. 2d 548, 563 (S.D.N.Y. 2005). In *Garvin*, however, the plaintiff admitted that his proposed accommodation "posed a safety hazard." *Id.* Here, by contrast, Plaintiff argues that the "risk of allowing her to use a modification would pose [nothing] more than a speculative or remote [safety] risk." Pl.'s Opp'n at 14 (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 220 (2d Cir. 2001)). These arguments—along with Defendants' contentions that accommodating Plaintiff would pose a "direct threat"—raise clear questions of fact that are inappropriate for resolution at the motion to dismiss stage.[6]

Turning next to the second EEOC consideration: the availability of employees capable of performing the job. It is unclear from the Amended Complaint whether there are sufficient Direct Support Assistants capable of performing secondary measures, such that an accommodation would not be overly burdensome. Further, neither party briefed the third EEOC consideration: whether the function at issue—the specific techniques taught in the PROMOTE training—is highly specialized. On the face of the Amended Complaint, it appears that the techniques are not specialized. Plaintiff

---

[6] The "direct threat" defense will remain available to Defendants as this case proceeds, along with other factual arguments relating to the essential nature of the specific secondary tools taught in the PROMOTE training.

alleges that they can be taught and tested in just a three-hour block, and consist of very simple self-defense techniques for which no certification or education (besides the PROMOTE training) is required. *Id.* ¶ 48. In sum, although it seems essential that Direct Support Assistants be able to provide a safe environment, Plaintiff has plausibly alleged that the specific techniques taught in the PROMOTE training are not essential.

### B. Reasonability of Plaintiff's Proposed Accommodation

Because Plaintiff plausibly alleges that the specific PROMOTE techniques are not essential, the Court turns to her proposed accommodation. Here, again, the Court concludes that Plaintiff's proposed accommodation—"self-modified" self-defense techniques—"present[s a] relevant question[] of fact that presumably will be elucidated by the discovery process and, if appropriate, trial." *Shaywitz*, 675 F. Supp. 2d at 391. Plaintiff will eventually need to prove that her "self-modified" techniques—whatever they entail—allow her to provide a safe environment, but she need not do so to survive a motion to dismiss. "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a *prima facie* showing that a reasonable accommodation is available." *Goonan*, 916 F. Supp. 2d at 481. Plaintiff has thus plausibly pled the existence of a reasonable accommodation.

### C. Defendants' Alleged Failure to Facilitate an Interactive Process

The motion is also denied to the extent Plaintiff's claims rely upon Defendants' failure to facilitate an interactive process. Defendants' argument on this issue is entirely contingent on the notion that Plaintiff's proposed accommodation would eliminate an essential function of the Direct Support Assistant position. Defs.' Br. at 17–18. Because Plaintiff has plausibly alleged that the specific techniques taught in the PROMOTE training—as opposed to the general ability to provide a safe environment—were not essential to the position, Defendants' motion is also denied on the interactive process issue.

## II.    Plaintiff's Hostile Work Environment Claims

Defendants further maintain that Plaintiff has failed to state a claim on her hostile work environment theory under federal law, arguing that Plaintiff does not adequately allege a workplace pervasive with disability-based discrimination.  In opposition, Plaintiff argues that she was subject to a "series of hostile acts . . . which evince a culture of discrimination based on disability and which altered her employment for the worse."  Pl.'s Opp'n at 22.  The Court concludes that Plaintiff has not stated a claim for hostile work environment under federal law, but has under state and city law.

### A.  Hostile Work Environment Claims Under the Rehabilitation Act and ADA

To plead a hostile work environment claim under the ADA or the Rehabilitation Act,[7] a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015); *Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 340 (2d Cir. 2025) (same).  Although "a single episode of harassment, if severe enough, can establish a hostile work environment," *Torres v. Pisano*, 116 F.3d 625, 631 n.4 (2d Cir. 1997), "isolated incidents or episodic conduct will not support a hostile work environment claim" under the ADA or the Rehabilitation Act.  *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Plaintiff has alleged that her accommodation claim was not treated with sufficient urgency, but this does not amount to an "abusive" environment.  *Littlejohn*, 795 F.3d at 320.  Other than the single incident where Cooney allegedly "humiliated" her during the PROMOTE training, Plaintiff does not plausibly allege any incident of abuse that had any long-lasting impact on her workplace conditions.

---

[7] "The standard for pleading a hostile work environment claim under the Rehabilitation Act is the same as the standard under the ADA." *Figueroa v. Garland*, 2023 WL 4865831, at *8 (S.D.N.Y. July 31, 2023).

*See Richardson*, 180 F.3d at 437.  "The Second Circuit has erected a remarkably high hurdle with respect to the level and frequency of offensive conduct that must be present in order to sustain a hostile work environment claim," *Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 498 (S.D.N.Y. 2013), and Plaintiff has not cleared it here.  Plaintiff's hostile work environment claims under the ADA and Rehabilitation Act are therefore dismissed.

### B.  Hostile Work Environment Claims Under State and City Law

Lastly, Plaintiff alleges that by creating a hostile work environment through their treatment of her, Defendants violated the NYSHRL and NYCHRL. Defendants respond that Plaintiff's state and city law hostile work environment claims fail because Plaintiff was not treated worse than other employees on account of her disability.  In urging the Court to allow her state and city law claims to move forward, Plaintiff argues that she plausibly alleges she was knowingly subject to ridicule on account of her Erb's palsy.  Although Plaintiff's hostile work environment claims are dismissed under federal law, given that NYSHRL and NYCHRL hostile work environment claims require only a showing that "she was treated less well than other employees because of" her disability, her state and city hostile work environment claims may proceed.  *Bilitch v. New York City Health & Hosps. Corp.*, 148 N.Y.S. 3d 238, 245 (2021).

"[T]he standard for pleading a disability discrimination claim under the NYSHRL and NYCHRL is more lenient than the ADA standard." *Weekes v. JetBlue Airways Corp.*, 2022 WL 4291371, at *8 (E.D.N.Y. Sept. 16, 2022).  Likewise, "[t]he standard for sufficiency of a hostile work environment claim under the NYCHRL [and the NYSHRL] is more relaxed than under [its] federal counterparts.  A plaintiff must show only unequal treatment based upon membership in a protected class. In other words, a plaintiff must show that [s]he was treated less well because of discriminatory intent."[8] *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 287 (S.D.N.Y. 2024).

---

[8] Following the New York State Legislature's amendment of the NYSHRL in 2019, Defendants concede that NYSHRL hostile work environment claims are now evaluated under the same standard as NYCHRL claims in this District.

15

Plaintiff alleges that she was targeted for humiliation when Cooney called her to the front of the PROMOTE training to perform a task that he knew Plaintiff's disability prevented her from completing.  Am. Compl. ¶¶ 95–99.  She further asserts that the other employee Defendants ignored her discrimination complaints and did nothing to facilitate what she argues was a reasonable accommodation, despite her strong work performance.  Defendants deny that she received worse treatment than her coworkers, suggesting that all the PROMOTE training participants were called to the front of the class to demonstrate the secondary tools.  Defendants' arguments on this issue, however, are based entirely on a document which the Court cannot consider at this stage, the PROMOTE training "workbook."  Defs.' Br. at 21.  Plaintiff has thus plausibly alleged that she was treated worse on account of her Erb's palsy.  The motion is denied as to Plaintiff's NYSHRL and NYCHRL claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.  Counts I and II are dismissed only to the extent they state claims for the creation of a hostile work environment; Plaintiff's reasonable accommodation claims, alleged in those counts, may proceed, as may Plaintiff's NYSHRL and NYCHRL claims, Counts III and IV.  The Clerk of Court is respectfully ordered to close the motions pending at Docket Numbers 9 and 24.

SO ORDERED.

Dated:    March 30, 2026
          New York, New York

Hon. Ronnie Abrams
United States District Judge

---

Defs.' Br. at 20; *see also Vora v. N.Y.C. Dep't of Educ.*, 2024 WL 1421131, at *17 (S.D.N.Y. Jan. 24, 2024), *R. & R. adopted*, 2024 WL 1116312 (S.D.N.Y. Mar. 14, 2024) ("While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, courts in this District have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL.").